IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MICHAEL A. HOZA,** | : | Bankruptcy No. 05-32043 BM |
| d/b/a KODIAK STEAMER, | : | |
| | : | |
| **Debtor** | : | Chapter 7 |

*******************************

| | | |
|---|---|---|
| **PATRICK WILLIAMS,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 06-2152 BM |
| | : | |
| **MICHAEL A. HOZA,** | : | |
| | : | **Complaint Objecting To Discharge** |
| **Defendant** | : | **Of Debtor** |

Appearances:   Christopher J. Klein, Esquire for Plaintiff
Dennis J. Spyra, Esquire for Defendant

## MEMORANDUM OPINION

Plaintiff Patrick Williams seeks to have debtor Michael A. Hoza denied a general discharge in accordance with § 727(a)(2)(A) of the Bankruptcy Code. He maintains that, less than months before voluntarily commencing his bankruptcy case, debtor transferred three tracts of real property he owned with actual intent to hinder, delay or defraud his creditors.

Debtor denies that he actually intended to hinder, delay or defraud his creditors when he made the transfers.

Debtor will be denied a discharge for reasons set forth in this memorandum opinion.

## FACTS

Debtor purchased a carpet cleaning business known as Kodiak Steamer from plaintiff in July of 2002. The purchase price was $63,000. In addition to paying plaintiff $15,000 at the closing, debtor executed a judgment note in the amount of $48,000 plus interest. Payments in the amount of $950.62 per month were to begin on August 30, 2002, and were due on the thirtieth day of each succeeding month until the note was paid in full.

Among other things, the note provided that in the event debtor defaulted, plaintiff was entitled to a judgment in confession for any remaining amounts due.

Debtor defaulted on his obligation in September of 2004 and received notice thereof from plaintiff on January 5, 2005. Efforts to re-negotiate the note ensued shortly thereafter but reached an impasse when debtor was not able to collateralize such a note.

On January 27, 2005, approximately three weeks after receiving notice of the default, debtor and Jennifer Fox entered into an agreement whereby debtor agreed to sell real property he owned which was located in Greensburg, Pennsylvania, to Jennifer Fox for $75,000. For reasons unknown, the sale was not consummated until some five months later.

Plaintiff confessed judgment against debtor in state court on June 13, 2005. The amount of the judgment was $36,817.61.

Debtor was the sole owner of three tracts of real property when the judgment in

confession was entered on the record. Two were located in Jeanette, Pennsylvania. The third, which he agreed to sell to Jennifer Fox, was located in Greensburg, Pennsylvania.

On June 21, 2005, only eight days after plaintiff had confessed judgment against him, debtor executed a deed conveying the Jeanette property to Jennifer Fox. Curiously, the consideration recited in the deed was $120,000 rather than $75,000, as was provided for in the agreement of sale debtor and Fox had executed five months earlier.

Questions concerning this transaction do not end with the difference between the price recited on the deed and the amount specified in the agreement of sale.

For reasons that are not clear from the record, two settlement statements were prepared for the closing. The contract sale price was listed as $75,000 in one version and as $120,000 in the other. In addition, the former version recited that cash paid to debtor totaled $13, 039.27 while the latter version recited that cash paid to him totaled $59,039.27. Debtor signed the latter settlement statement rather than the former.

To confound matters further, the settlement officer issued a check at the closing payable to debtor in the amount of $11,259.27, which differed from the amount debtor was to be paid according to either of the settlement statements.

Debtor did not deposit the check into his bank account until July 2, 2005, eleven days after the closing took place. What debtor did with the funds is not clear. Debto0r testified at trial that he used the funds to repair equipment used in his carpet cleaning business, but produced no documents to support his testimony. One thing is clear: the funds were not used to pay any of the debt owed to plaintiff by debtor.

The above conveyance to Jennifer Fox was not the only conveyance that occurred in June of 2005.  On June 30, 2005, only seventeen days after plaintiff had confessed judgment against him, debtor conveyed the two Jeanette properties to himself and his mother as joint tenants with right of survivorship.  The consideration recited in each deed was $1.00.

Debtor continues to reside in one of the properties and rents out the other property for which he receives $910 per month.

Debtor admitted at trial that he was aware of the confessed judgment when he conveyed the three properties.

On September 11, 2005, approximately three months after plaintiff had confessed judgment against him, debtor filed a voluntary chapter 7 bankruptcy petition along with the required schedules and statement of financial affairs.  Information contained therein concerning the above transfers was confusing.

Debtor listed in his schedules the Jeanette properties he had conveyed to himself and his mother as joint tenants.  He asserted that the properties had a combined declared value of $95,000 and were subject to mortgages totaling $87,715.  Elsewhere in the schedules, plaintiff was identified as having an undisputed general unsecured claim in the amount of $36,817, the amount of the confessed judgment.

In his statement of financial affairs, debtor identified the conveyance of the Greensburg property as a transfer of property belonging to him that had occurred within one year of the petition date.  The transferee of the property, however, was identified as

one Matt Yurkeson instead of Jennifer Fox, who was identified as the grantee on the deed conveying the property. Moreover, the amount of consideration paid was listed as $120,000, the amount identified on the settlement statement debtor signed rather than the amount identified on the other settlement sheet and that was stated in the agreement of sale with Jennifer Fox dated January 27, 2005.

No mention was made in the statement of financial affairs, however, of the transfers of the two Jeanette properties debtor had conveyed to himself and his mother as joint tenants. These transfers, like the transfer of the Greensburg property, were made less than one year prior to the petition date.

Plaintiff commenced this adversary action against debtor on February 2, 2006. He asserted in the complaint that debtor made all of the transfers with actual intent to hinder, delay or defraud his creditors and seeks to have debtor denied a discharge in accordance with § 727(a)(2)(A) of the Bankruptcy Code.

The adversary action has been tried and is now ready for decision.

## DISCUSSION

The provision of the Bankruptcy Code upon which plaintiff relies provides in pertinent part as follows:

> (a) The court shall grant the debtor a discharge, unless -- ….
>     (2) the debtor, with intent to hinder, delay or defraud a creditor …
>     has transferred …, or has permitted to be transferred … --
>         (A) property of the debtor, within one year before the date
>         of the filing of the petition ….

11 U.S.C. § 727(a)(2)(A).

Section 727 is to be liberally construed in favor of a debtor and against a creditor objecting to a debtor's discharge. Completely denying a debtor a discharge is an "extreme step" and should not be taken lightly. *Rosen v. Bezmer*, 996 F.2d 1527, 1531 (3d Cir. 1993).

One does not, however, have a constitutional right to a discharge. *U.S. v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 631 (1973). Except for three short periods totaling approximately fifteen years during the first one-hundred-and-twenty years of our Nation's existence, there was no federal bankruptcy law. *Id.*, 409 U.S. at 447, 93 S.Ct. at 639.

The "fresh start" afforded by a bankruptcy discharge is not for any and all debtors no matter what, but instead is reserved for the "honest but unfortunate" debtor. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991).

The exception to discharge found at § 727(a)(2)(A) is comprised of two basic components: *an act*, such as transferring or concealing debtor's property, and *an improper motive*, such as a subjective intent to hinder, delay or defraud creditors. *Rosen*, 996 F.2d at 1531. The party seeking to deny a debtor a discharge must establish the presence of both components during the one-year period preceding bankruptcy; anything occurring before then is "forgiven". *Id.*

To prevail under § 727(a)(2)(A), plaintiff in this case must prove: (1) a transfer of property; (2) belonging to debtor; (3) within one year of the petition date; and (4) an

actual intent to hinder, delay or defraud creditors. *Razzaboni v. Schifano*, 378 F.3d 60, 66067 (1st Cir. 2004).

The intent required by the fourth of these elements must be actual (subjective); constructive intent will not suffice. *Groman v. Watman (In re Watman)*, 301 F.3d 3, 8 (1st Cir. 2002). Because of the difficulty of proving actual intent directly, it may be inferred from the debtor's conduct and other circumstances. *Dennis v. Dennis (Matter of Dennis)*, 330 F.3d 696, 701-02 (5th Cir. 2003).

A creditor objecting to a debtor's discharge in bankruptcy has the burden of proving, by a preponderance of the evidence, that each of the above elements is satisfied. *Watman v. Groman (In re Watman)*, 458 F.3d 26, 32 (1st Cir 2006).

Debtor concedes that the first three elements are present here. That is to say, debtor concedes that he transferred the above properties, of which he was the sole owner, within one year of the petition date. He conveyed the Greensburg property to Jennifer Fox on June 21, 2005 and conveyed the Jeannette properties to himself and his mother nine days later on June 30, 2005.

Debtor denies, however, that the fourth of the above elements is present. He denies transferring any of the above properties with actual intent to hinder, delay or defraud his creditors, in particular plaintiff. Debtor's protestations of "innocence" in this regard ring hollow. Circumstances surrounding the transfers indicate otherwise.

Debtor admitted at trial that when these transfers occurred, he was aware that plaintiff had confessed judgment against him. He attempted, however, to portray himself

as unsophisticated and oblivious to the potential consequences of so doing if he went into bankruptcy. His depiction of himself as such an individual was not convincing. The circumstances preceding and surrounding the transfers overwhelmingly indicate that debtor had actual intent to hinder, delay or defraud his creditors when he made the transfers.[1] Temporal aspects of the circumstances leading to the transfers in particular lead us to so conclude.

After defaulting on his obligation to plaintiff in September of 2004 and receiving notice thereof from plaintiff on January 5, 2005, debtor had discussions, which went nowhere, concerning re-negotiating the terms of the 2002 judgment note. Later on that same month, while the discussions with plaintiff were taking place, debtor agreed to sell the Greensburg property to Jennifer Fox for $75,000.

Debtor offered no explanation, let alone a convincing explanation, for why he agreed to sell the Greensburg property to Jennifer Fox only three weeks after receiving notice that he had defaulted on the 2002 judgment note. Debtor did not, for instance, claim that he sold the Jeannette property to satisfy the confessed judgment against him. In our estimation, the close proximity in time of the agreement of sale to debtor's receipt of the notice of default was not coincidental.

The matter does not end there. Debtor conveyed the Greensburg property only three weeks *after* plaintiff had confessed judgment against him and less than three months *before* debtor filed a chapter 7 bankruptcy petition. The proximity of entry of the

---

[1] Although something unquestionably was "rotten in Denmark" with respect to the sale and closing on the Jeanette property to Jennifer Fox, we need not delve into the transaction to decide this adversary action.

confessed judgment and the conveyance to another as well as their proximity to the petition date indicates that the timing of these events was far from coincidental. To the contrary, it strongly indicates that debtor transferred the property when he did because he actually intended to defraud his creditors by excluding the property from his bankruptcy estate, where it might have been available to satisfy his creditors. Debtor instead pocketed the net sale proceeds and used them for some other purpose(s).

The same is true of the conveyances of the Jeannette properties from debtor to himself and his mother as joint tenants. The conveyances occurred only seventeen days *after* judgment was confessed against debtor and less than three months *before* the petition date. The proximity of entry of the confessed judgment and the conveyances to one another as well as their proximity to the petition date indicates that debtor actually intended to defraud his creditors by excluding the properties from his bankruptcy estate and making them unavailable for distribution to his creditors. To make matters worse, debtor indicated in documents filed with his bankruptcy petition that he intended to continue paying the mortgages on these properties and to retain them.

While debtor and his mother did offer an explanation at trial for why debtor conveyed the Jeannette properties to himself and his mother as joint tenants, no explanation was offered for why the transfers occurred *when* they did.

Debtor and his mother both testified that she had loaned money to debtor so he could make needed repairs to the Jeannette properties, one of which is a rental unit.

According to debtor's mother, she loaned $2,000 to debtor "during the cold months" of 2004 to repair the furnace in one of the properties. Debtor's mother further testified that she loaned debtor another $2,000 at some undisclosed time in 2005 to repair the roof of one of the properties and to install an alarm system. The reason for the conveyances, she testified, was to "protect" the loans she had made to debtor.

The testimony of debtor's mother that she loaned a total of $4,000 to debtor before the conveyances occurred was not credible. When asked at trial if she could document the existence of these purported loans, debtor's mother was not able to do so and stated indignantly that she did not think that she would be asked to do so. Without such documentation, we are not inclined to believe that such loans ever were made.

According to debtor's bankruptcy schedules the Jeannette properties had a combined value of $95,000 as of the filing of the petition and were subject at that time to consensual mortgages totaling $87,715. If these amounts are accurate, only $7,285 of equity in the properties would remain. Debtor's counsel argued at trial that because so little equity in the properties remained, it would be far-fetched to conclude that debtor actually intended to defraud his creditors. We disagree.

To begin with, there is no reason to believe that only $7,285 in equity remained in the properties as of the petition date. Debtor testified at trial that the declaration in his bankruptcy schedules that the Jeannette properties had a combined value of $95,000 was based on appraisals of the properties which were done some three years prior to the petition date. In our estimation, it at least as likely as it is not that the properties had

appreciated in value during those three years and had a combined value of more than $95,000. If they had so appreciated, the available equity in the properties would be greater than $7,2875, perhaps significantly more.

More importantly, even if the amount of available equity in the Jeannette properties was only $7,285, this does not tend to undermine the inference that debtor did not actually intend to defraud his creditors. In our estimation, the amount out of which a debtor's creditors are defrauded as a result of a transfer has no bearing on whether § 727(a)(2)(A) applies. We know of no minimum threshold in the amount of available equity which must be exceeded before § 727(a)(2)(A) applies to a transfer.

Even an inept debtor whose actions do not succeed in depriving creditors of much in the way of value which could be used to satisfy their claims may nonetheless actually intend to defraud his or her creditors for purposes of § 727(a)(2)(A). Harm to one's creditors is not required for § 727(a)(2)(A) to apply. *Matter of Snyder*, 152 F.3d 596, 601 (7th Cir. 1998); *Heinecke v. Ryan (In re Ryan)*, 285 B.R. 624, 630 (Bankr. W.D. Pa. 2002).

We conclude in light of the foregoing considerations that § 727(a)(2)(A) applies to this case and that debtor therefore should be completely denied a discharge.

An appropriate order will issue.

                                                          **BERNARD MARKOVITZ**
                                                          U.S. Bankruptcy Judge

Dated: August 13, 2007

N

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MICHAEL A. HOZA,** | : | Bankruptcy No. 05-32043 BM |
| d/b/a **KODIAK STEAMER,** | : | |
| | : | |
| Debtor | : | Chapter 7 |
| ******************************** | | |
| **PATRICK WILLIAMS,** | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adversary No. 06-2152 BM |
| | : | |
| **MICHAEL A. HOZA,** | : | |
| | : | Compliant Objecting To Discharge |
| Defendant | : | Of Debtor |

## ORDER OF COURT

**AND NOW**, this **13th** day of **August**, 2007, in light of the foregoing memorandum opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that debtor Michael A. Hoza be and hereby is **DENIED** a **DISCHARGE**.

It is **SO ORDERED**.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm:   Debtor
      Christopher J. Klein, Esq.
      Dennis J. Spyra, Esq.
      James R. Walsh, Esq.
      Office of United States Trustee

FILED

AUG 13 2007

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA